HEATHER E. WILLIAMS, #122664
Federal Defender
BENJAMIN D. GALLOWAY, #214897
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: 916-498-5700/Fax 916-498-5710
Ben_D_Galloway@fd.org

Attorney for Defendant
JAMES MALCOLM

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>JAMES MALCOLM,<br><br>        Defendant. | Case № 2:14-cr-00158 TLN<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>DATE:      March 10, 2016<br>TIME:       9:30 a.m.<br>JUDGE:    Hon. Troy L. Nunley |

**I.      INTRODUCTION**

James Malcolm will appear before this Court for sentencing on March 10, 2016.  The government and the defense have worked from the outset to fairly assess the conduct at issue, and agree that a sentence of 60 months is the appropriate disposition of the case.  This jointly recommended sentence is the result of extensive and productive discussion and analysis.  The parties are in full agreement that this sentence strikes the proper balance.  This agreement reflects the consensus of the stakeholders in this case, including both local and federal law enforcement, that 60 months of imprisonment is sufficient to achieve justice and protect the community.  As this is Mr. Malcolm's first and only offense, a five-year sentence is ample to promote respect for the law, provide a just punishment, afford adequate deterrence, and avoid unwarranted disparity.  As such, the jointly-recommended is sufficient, but not greater than necessary, to comply with the 18 U.S.C. § 3553(a) sentencing factors.

Defendant's Sentencing Memorandum                              -1-

## II.   NATURE AND CIRCUMSTANCES OF THE OFFENSE

The nature and circumstances of the offense are set forth in the presentence report and are not in dispute.  Mr. Malcolm was briefly involved in the sale of weapons and a crude form of biotoxin in non-lethal quantities.  This was Mr. Malcolm's first brush with the law and it was a desperate attempt to keep a roof over his family's heads.

The family's financial problems are well documented in paragraphs 18-21 of the presentence report.  Their home was seriously damaged in a fire.  A previous owner hid the damage, and it went undiscovered until after the Malcolms purchased the home.  Their insurance claim was denied, so Mr. Malcolm attempted to repair the damage himself.   But the more time and money he sank into the effort, the more hopeless it became.  Further, he received notice from the county of Sacramento that he had to complete the repairs within six months or the couple and their young children would be homeless.  Mr. Malcolm was frantic.

It was in this state that Mr. Malcolm found himself watching an episode of "Breaking Bad," about a mild-mannered teacher who turns to a life of crime to save his family from financial ruin.  The episode focused on ricin, a poison purified and extracted from common beans.  Ever curious, Mr. Malcolm researched the topic on the internet and discovered that the beans are legal and commonly available for gardening, jewelry making, and decorations.  He discovered that a few dollars' worth of legal plant material could be crushed and resold to buyers on online black markets for many times the value.

Mr. Malcolm posted an inquiry on a darknet website testing buyers' interest in the product. He received multiple inquiries.  He responded to two separate buyers in New York and San Francisco, but instead of sending refined poison, Mr. Malcolm sent intentionally non-lethal amounts of crushed rosary peas, which contain trace amounts of the biotoxin abrin.  His idea was to make money from those who wanted the poison without actually hurting anyone.  As the

presentence report notes, his financial panic also motivated his dealings with the undercover ATF agents. PSR ¶ 21.

This information is not offered to excuse his misdeeds, but instead to provide greater context and understanding. Importantly, Mr. Malcolm never intended to harm anyone, and no one was harmed by his actions. Still, he never should have gotten involved in this world and has been working since his arrest to make amends.

### III.   HISTORY AND CHARACTERISTICS OF JAMES MALCOLM

James Malcolm reminds us that every person is worth more than their worst acts. Indeed, everything about Mr. Malcolm's life has been contrary to his misconduct in this case. He is a 31 year-old with no only criminal history whatsoever. PSR ¶¶ 49-57. He was arrested on May 4, 2014, and has worked since then to better himself and be productive. He serves food, cleans and performs other duties as a volunteer jail worker. He also earned his GED in custody, and has spent considerable time reflecting on his mistakes, and focusing on a positive future and providing for his family.

#### A. Mr. Malcolm is an Otherwise Upstanding Citizen

Mr. Malcolm has a supportive network of friends and family, and has been in a stable and loving relationship for well over a decade. PSR ¶¶ 62-63. Fifteen character reference letters were submitted on Mr. Malcolm's behalf from family, friends and customers including doctors, executives, educators and other professionals. "They describe Malcolm as honest, dutiful, hardworking, intelligent, and an excellent father. They also indicate that his arrest for violating the law is completely out of character and that he has expressed deep regret for what he has done." PSR ¶ 63. These letters are remarkable in their quantity, and especially in their quality. These are long, thoughtful, heartfelt letters from truly decent people who know and support Mr. Malcolm.

**B. Mr. Malcolm is a Hard Worker with a Generous Character**

These letters describe a "dutiful provider and a loving, nurturing caregiver to his wife and children." Doc. 39-1, p. 9.  They characterize Malcolm as "reliable, trustworthy, and knowledgeable." Doc. 39-1, p. 2.  They note that "[h]e has contributed so much to so many." Doc. 39-1, p. 7.  They describe Malcolm as "considerate of our needs," and "always courteous, on time, honest and respectful." Doc. 39-1, p. 3, 8.  The letters universally acknowledge that "Malcolm's wife and children were the focus of all of his energies." Doc. 39-1, p. 2.  "He is very in love with his wife and a proud father." Doc. 39-1, p. 5.  "He works very hard, long hours … and yet still finds time for her and the kids." Doc. 39-1, p. 6.

**C. Mr. Malcolm is Devastated by His Actions and He Will Not Reoffend**

Mr. Malcolm quickly accepted complete responsibility for his misconduct.  He was and remains profoundly remorseful for his mistakes. PSR ¶ 16.  His offense and the uncertainty ahead have weighed heavily over the last 22 months.  He is a "humbled person who regrets each and every day that this has happened." Doc. 39-1, p. 21.  One friend described "the tears in his voice," noting that he "apologized profusely for any embarrassment he caused my family… and told me how ashamed of himself he was." Doc. 39-1, p. 18.  Another close friend described this as "a spectacularly singular event, never to be repeated again in any form or fashion. I have never known James to act in any way but with a healthy respect for the law and its agents and institutions. I have never even known James to as much as litter." Doc. 39-1, p. 9.

Supporters agree that, once released, Malcolm "will offer his family and our society his true character of devoted family man, hardworking individual who performs his skills admirably and with respect to his clients." Doc. 39-1, p. 8.

**IV.   PUNISHMENT, DETERRENCE, PROTECTION OF THE PUBLIC**

As evidenced by the many character letters, and by Mr. Malcolm's immediate acceptance

of responsibility and overall approach since his arrest, this case has already had a profound impact on him. In the 22 months since this offense, Mr. Malcolm has anguished over his wrongdoing. The requested sentence of 60 months will have a major impact upon Malcolm's family, and particularly on his wife and children. He will be away from all that he cares about for a significant period of time. This impact alone is sufficient punishment and will provide all the deterrence necessary.

The jointly requested 60-month sentence will provide even greater punishment and deterrence for Mr. Malcolm because he has never been incarcerated. As the Seventh Circuit has recognized, "a prison sentence would mean more to [a defendant who had never been imprisoned] than to a defendant who previously had been imprisoned. Consideration of this factor is consistent with section 3553's directive that the sentence reflect the need for 'just punishment' and 'adequate deterrence.'" United States v. Baker, 445 F.3d 987, 992 (7th Cir. 2006); see also United States v. Qualls, 373 F. Supp.2d 873, 877 (E.D. Wis. 2005)("Generally a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.")

### A. Mr. Malcolm "is Not Considered a Threat to Commit Violence or Propensity for Danger"

By agreement of the parties, Mr. Malcolm was referred for a forensic psychology evaluation in July 2015. The forensic psychologist was selected by both the government and the defense.[1] In summary, based on Malcolm's personal background, history and psychological testing and violence assessment, the forensic psychologist determined that there is no indication of future risk for violence or propensity for danger.

The report notes that Malcolm received no DSM-V diagnosis, and further states:

---

[1] The evaluation has been attached to the PSR for the Court's consideration.

Defendant's Sentencing Memorandum         -5-

> [Malcolm] possesses good intellectual strength and has the capacity to make appropriate judgments and reasoned life decisions. The defendant has … sufficient emotional and social resources, and the ability to maintain self- control. [He] is not considered a threat to commit violence or propensity for danger. He owned weapons but has no history of their use in active or implied threat. He recognizes the significance of actions.

Mr. Malcolm truly regrets his offense, and he is saddened by the impact it is having on his family. Still, he understands and accepts that involvement in this offense violated federal law and must be punished.

### V.   CONCLUSION

For the foregoing reasons, Mr. Malcolm respectfully requests that the Court sentence him to 60 months in prison. This sentence is adequate to achieve justice and satisfy the 18 U.S.C. § 3553(a) sentencing factors in this case.

DATED: March 3, 2016

Respectfully submitted,
HEATHER E. WILLIAMS
Federal Defender

/s/ Benjamin D. Galloway
Benjamin D. Galloway
Assistant Federal Defender
Attorney for James Malcolm